1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                   **CENTRAL DISTRICT OF CALIFORNIA**
10
11   **AMBER L. COOK,**                    )      NO. EDCV 04-01497-MAN
                                           )
12                 **Plaintiff,**          )
                 **v.**                    )
13                                         )
                                           )      MEMORANDUM OPINION AND ORDER
14   **Jo ANNE B. BARNHART,**              )
     **Commissioner of the**              )
15   **Social Security Administration,**   )
                                           )
16                 **Defendant.**          )
17   _____)

18        Plaintiff filed a Complaint on December 10, 2004, seeking review of
19   the denial by the Social Security Commissioner ("Commissioner") of her
20   claims for disability insurance benefits ("DIB") and supplemental
21   security income benefits ("SSI").  On January 25, 2005, the parties
22   filed a "Consent to Proceed Before a United States Magistrate Judge,"
23   pursuant to 28 U.S.C. § 636(c).  The parties filed a Joint Stipulation
24   on November 18, 2005, in which:  Plaintiff seeks an order reversing the
25   Commissioner's decision and directing the payment of benefits or,
26   alternatively, remanding the case for further proceedings before a
27   different administrative law judge; and Defendant requests that the
28   Commissioner's decision be affirmed.  The

Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed her applications for SSI and DIB on or about December 13, 2000. (Administrative Record ("A.R.") 59-61, 193-95.) Plaintiff claimed to have been disabled since October 7, 2000, due to bipolar disorder, extreme anxiety, and depression. (A.R. 65, 212.) She has past relevant work experience as a cashier, a 411 operator, and a warehouse machine operator. (A.R. 66, 78, 215.)

The Commissioner denied Plaintiff's claims initially and upon reconsideration. (A.R. 197-202.) On March 26, 2002, at a hearing before Administrative Law Judge Keith Varni ("ALJ"), testimony was given by Plaintiff, who was represented by counsel, and by a Vocational Expert ("VE"). (A.R. 25-41.) On April 12, 2002, the ALJ denied Plaintiff's request for benefits, and the Appeals Council subsequently denied her request for review. (A.R. 4-5, 11-16.)

Plaintiff sought review of that decision in this Court (Case No. CV 02-1053-MAN). On August 29, 2003, this Court remanded the case for further proceedings on two grounds ("2003 Order"): (1) to develop and evaluate the medical evidence; and (2) to consider all lay opinion of record. (A.R. 223-41.)

In accordance with this Court's 2003 Order, additional medical records were obtained, and a new hearing was conducted on September 10,

2004.  (A.R. 211.)  Testimony was again given by a VE.  (A.R. 248.) Plaintiff failed to appear at the September 10, 2004 hearing and Plaintiff's attorney, who did appear at the hearing, reported to the ALJ that he did not know Plaintiff's whereabouts.  (A.R. 220.)  In a September 30, 2004 decision, the ALJ again denied Plaintiff's request for benefits.  (A.R. 208-17.)  The ALJ's decision notes that, in connection with the proceedings on remand, Plaintiff "was scheduled for a consultative examination[s]," but "failed to keep [her] appointments for consultative examinations."  (A.R. 211, 220.)[1]

**SUMMARY OF ADMINISTRATIVE DECISION**

In his September 30, 2004 written decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset of disability. (A.R. 212.) The ALJ found that Plaintiff: "is a 'younger individual'"; "has a 'limited education'"; and "has no transferable skills" from any past relevant work. (A.R. 216.) The ALJ

---

[1]    20 C.F.R. § 404.158(a) provides:

If you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination or test which we arrange for you to get information we need to determine your disability or blindness, we may find that you are not disabled or blind. . . . We will consider your physical, mental, educational, and linguistic limitations (including any lack of facility with the English language) when determining if you have good cause for failing to attend a consultative examination.

Under this regulation, a claimant's "failure to attend a consultative examination permits an adverse inference to be made concerning a claimant's disability status." Hollins v. Apfel, 160 F. supp. 2d 834, 838 (S.D. Ohio 2001).  See also Kreidler v. Barnhart, 385 F. Supp. 2d 1034, 1037 (.D. Cal. 2005)(claimant's "repeated failures to attend consultative examinations scheduled for her constitute a failure to cooperate sufficient to warrant termination of her disability benefits," citing Section 404.1518(a)).

3

determined that Plaintiff "has no physical impairment and very questionably [mental] impairments from a history of methamphetamine and marijuana abuse and an assertion of a bipolar affective disorder, which are considered 'severe' based on the requirements in the Regulations." (*Id; see also* A.R. 212.)   The ALJ also found that these medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  (A.R. 216.)

The ALJ found that the allegations of Plaintiff and her grandfather allegations regarding her limitations are "not totally credible."  (A.R. 216.)   The ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform "a significant range of work at all exertional levels" and is "capable of making a vocational adjustment to other work."  (A.R. 216-17.)   Using Medical Vocational Guidelines Rule 204.00 as a framework for decision-making and relying upon the VE's testimony, the ALJ found that Plaintiff can perform a significant number of jobs in the national economy, such as "assembler, packager, housekeeper, and maid, all learnable by less than 30 days of demonstration and on-the-job training."  (A.R. 216.)   Accordingly, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act.  (A.R. 216-17.)

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence.  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996).  The

4

Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards. <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." <u>Moncada v. Chater</u>, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Sec'y. of Health and Human Serv.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id.* at 1041; *see also* <u>Morgan v. Commissioner of the Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999); <u>Flaten v. Secretary</u>, 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff alleges four issues. <u>First</u>, the ALJ failed to comply with this Court's 2003 Order to address statements made by Plaintiff's grandfather, Mr. Joe Brown, appropriately. <u>Second</u>, the ALJ did not consider properly the opinions of Plaintiff's treating physicians.

5

<u>Third</u>, the ALJ did not consider properly the assessment completed by Plaintiff's treating therapist.  <u>Fourth</u>, the ALJ failed to pose a complete hypothetical question to the VE.  (Joint Stipulation ("Joint Stip.") at 3-4.)

**A.**   **The ALJ Properly Complied With This Court's 2003 Order To Address Statements Made By Plaintiff's Grandfather, Mr. Brown.**

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001); *see also* <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996); <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993).  An ALJ may "properly discount lay testimony that conflict[s] with the available medical evidence." <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1395 (9th Cir. 1984).  When, however, a lay witness testifies about a claimant's symptoms, which may affect the claimant's ability to work, such testimony is competent evidence and, therefore, cannot be disregarded without comment.  *Id*.

In expressly addressing and discounting the statements made by both Plaintiff and her grandfather, the ALJ stated, in pertinent part:

> The claimant's statements in the record and third party statements by the claimant's grandfather indicate the claimant was independent for all self-care activities, performs a variety of daily activities, interacts with others on a superficial basis, and engages in purposeful activity when she is motivated

to do so . . . . She takes care of her son, goes to the grocery store once or twice a week, but she has to go with friends or relatives due to extreme anxiety.  The claimant also reported that she lost her last job due [to] leaving early and bad attendance due to her symptoms of anxiety . . . . While the claimant may experience some symptoms of anxiety and mood swings as a result of her mental impairments, these symptoms do not rise to the level of a disabling condition.  This is supported by the medical evidence and the claimant's activities of daily living.  Furthermore, the medical evidence shows that when the claimant is compliant with treatment, her symptoms improve significantly.  I find that while the statements of the claimant and those of her grandfather are credible to the extent that the claimant is limited to performing work within the delineated residual functional capacity **absent drug and alcohol abuse**, but all the aforementioned factors are inconsistent with an incapacitating or debilitating condition at any time since the claimant's alleged onset date.

(A.R. 215; emphasis added.)

Plaintiff contends that the ALJ failed to address adequately her grandfather's responses in his daily activities questionnaire and, therefore, acted in contravention of the 2003 Order.[2]  (Joint Stip. at

_____

[2]   This Court, in its 2003 Order, remanded the case to an ALJ for further proceedings to address Plaintiff's testimony regarding her alleged limitations as well.  In his prior decision the ALJ did not address, in accordance with the required legal standard, statements made by either Plaintiff or her grandfather.  Plaintiff does not now

5.)   In the 2003 Order, the Court noted that Mr. Brown commented upon Plaintiff's symptoms and limitations, and that "such evidence would most certainly have significant implications [regarding] Plaintiff's ability to sustain competitive employment."  (A.R. 236.)   Plaintiff further contends that the ALJ's failure to address her grandfather's statements separately constitutes reversible error, because an ALJ may not reject such statements without providing reasons germane to such a witness. (Joint Stip. at 5, citing <u>Smolen</u>, 80 F.3d at 1288-89; (citing <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1232 (9th Cir. 1987)).

     In evaluating the weight of lay witness evidence, the Ninth Circuit has observed:   "An eyewitness can often tell whether someone is suffering or merely malingering.   While this is particularly true of witnesses who view the claimant on a daily basis, the testimony of those who see the claimant less often still carries some weight." <u>Dodrill</u>, 12 F.3d at 919.   Contrary to Plaintiff's argument, Mr. Brown's relationship with Plaintiff is not analogous to a marital relationship in which a husband sees his wife on a regular, daily basis.   Rather, Mr. Brown, according to his own statements, has seen Plaintiff no more than four times a month, at most.[3]   In her daily activities questionnaire, Plaintiff reported that she goes to her grandparents' house about twice

_____

challenge the ALJ's credibility determination regarding her own statements.

     [3]   Mr. Brown reported in the daily activities questionnaire that: "[Plaintiff] visits us grandparents about once a week, if she can get a ride."  (A.R. 95.)

1   a month to visit her grandmother.[4]  (A.R. 89.)  As the record suggests

2   that Mr. Brown was not in a position to observe Plaintiff on a regular,

3   daily basis, the ALJ rightly accorded his statements less weight than

4   would be accorded to the statements of a person who had the ability to

5   observe Plaintiff more regularly.

6

7       Furthermore, to the extent Mr. Brown's observations of Plaintiff's

8   functioning appear to be based on Plaintiff's subjective complaints,

9   given his limited ability to make first-hand observations of her, it was

10  permissible for the ALJ to accord them limited weight.  Critically, the

11  ALJ properly discredited Plaintiff's testimony about her subjective

12  symptoms, and Plaintiff does not challenge that portion of the ALJ's

13  decision.  *See* <u>Dodrill</u>, 12 F.3d at 919; *see also, e.g.,* <u>Morgan</u>, 169

14  F.3d at 602 (stating that he ALJ properly may reject a physician's

15  disability opinion "premised to a large extent upon" the claimant's

16  "properly discounted" subjective complaints).

17

18      Moreover, both Plaintiff and her grandfather reported that she is

19  able to perform ordinary household and personal tasks.  (A.R. 86-87, 89,

20  92, 94.)  Both in her testimony and in statements made in her daily

21  activities questionnaire, Plaintiff reported that she:  independently

22  cares for her son; can maintain her own personal care without

23  assistance; cooks; cleans; and does the laundry.  (A.R. 86-87, 89.)

24  Tracking Plaintiff's responses, her grandfather reported that

25  _____

26      [4]  Although Plaintiff reported in her daily activities
    questionnaire that she usually visits her grandparents "twice a month,"
27  she noted that she goes to grandparents' home to speak with her
    grandmother and telephones her grandmother a couple of times daily.
28  (*Id.*)

"[Plaintiff] looks after her son and watches T.V." and "[does] laundry and cleaning," albeit with the assistance of her mother. (A.R. 92, 94.) The ALJ's unchallenged finding that Plaintiff is "independent for all self-care activities, performs a variety of daily activities, interacts with others on a superficial basis, and engages in purposeful activity when she is motivated to do so" (A.R. 215) provides a specific and germane reason for discrediting Mr. Brown's statements to the extent, if any, they suggest that Plaintiff is more limited. *See*, *e.g.*, <u>Light v. Social Security Admin.</u>, 119 F.3d 789, 793 (9th Cir. 1997)(ALJ may disbelieve a claimant's alleged limitations where the claimant's testimony regarding his daily activities and the nature, effect, or severity of his symptoms are inconsistent); <u>Matthews v. Shalala</u>, 10 F.3d 678, 679-80 (9th Cir. 1993)(the ALJ properly rejected the claimant's allegation that back pain was disabling, when claimant performed housecleaning and gardening, attended school, and only occasionally took pain medication); <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th cir. 1989)("if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working").

In addition, Mr. Brown's observations -- regarding Plaintiff's poor hygiene (A.R. 93), mood swings (A.R. 95), concentration problems (A.R. 96), and other alleged limitations (A.R. 92-97) -- echo information regarding Plaintiff's limitations provided by Plaintiff in her disability reports and testimony, which the ALJ rejected, and the rejection of which is not now challenged. Specifically, Plaintiff

reported:  (1) extreme anxiety and inability to deal with crowds on the one hand or being alone on the other hand ("I go to the grocery store once or twice a week [with] my mother . . . [be]cause I do not drive and I can't go in public alone"; "[W]hen I'm in public my heart starts pounding . . . I get dizzy and I have to be alone"; "I was fired for leaving work early and bad attendance . . . I could not stay [be]cause of my anxiety"); and (2) mood swings and lack of concentration ("I have a lot of mood swings and have a hard time committing to anything"; "I have headaches when I try to concentrate"; and "I have problems following through with things").  (A.R. 86-90.)  In discounting the credibility of both Mr. Brown's and Plaintiff's statements regarding her alleged extreme diminished mental capacities and limitations, the ALJ pointed out that the medical evidence shows that, when Plaintiff is compliant with medical treatment, her mood swings "do not rise to a disabling condition." (A.R. 215.)  The ALJ specifically indicated that Plaintiff's medical treatment was "routine and conservative" and, **absent polysubstance abuse**, "medication treatment has been effective in significantly improving the claimant's condition." (*Id.*)

Significantly, the ALJ cited numerous medical records indicating that compliance with medical treatment stabilized Plaintiff's condition. (A.R. 212-15.)  For instance, the ALJ pointed to an evaluation on May 28, 2003, conducted by Dr. Susan O'Connor at the Riverside County Mental Health Department ("Riverside"), in which Dr. O'Connor indicated that Plaintiff's polysubstance abuse was in "remission," and her condition had stabilized. (A.R. 214, 306.)  The ALJ also cited a progress note dated July 25, 2003, indicating that: (1) Plaintiff had no significant symptoms or medical problems; (2) Plaintiff was compliant with

11

treatment; and (3) despite symptoms of depression, she is "able to function." (A.R. 214, 287.)

Conversely, the ALJ cited medical evidence indicating the degeneration of Plaintiff's condition when she failed to comply with her medical treatment and engaged in heavy illegal drug abuse. The ALJ noted a September 20, 2003 medical report, in which Plaintiff complained of psychotic episodes as a result of taking Zoloft, increased anxiety, and an inability to sleep since incarceration.[5] (A.R. 214, 283.) However, as the ALJ explained, it was "suspected [by the treating facility] that her symptoms were possibly due to withdrawal from prescription drugs and street drugs," and "[Plaintiff] was [subsequently] prescribed Effexor and Zyprexa for her symptoms and there is no indication that her symptoms did not improve.[6] (A.R. 214, 283.)

Furthermore, the ALJ emphasized that "[Plaintiff's] symptoms are not severe enough to motivate her to seek treatment or follow [her] doctor's advice[.]" *See* <u>Smolen</u>, 80 F.3d at 1284 (in rendering a credibility determination, the ALJ may consider an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment."). Plaintiff has not only been inconsistently compliant with her medical treatment (*e.g.*, not showing up for doctors' appointments and not taking medication as prescribed),

---

[5]     Plaintiff was arrested on December 10, 2002, for "selling drugs within 100 yards of a school, forgery, stolen property, possession of controlled substance, possession for sales, and possession of needles/syringes." (A.R. 213, 344.)

[6]     Effexor is an anti-depressant medication, and Zyprexa is a psychotropic medication. *See, e.g.,* 2006 WL 372504, 390493 (PDR).

but also she has refused, on numerous occasions, to enter into a drug rehabilitation facility to address her polysubstance abuse problem as a prerequisite for the psychological treatment which her treating doctors have urged her to seek.   (*See* A.R. 271, 272, 273, 275, 286, 288, 289, 326, 329, 331, 334.)

    In sum, the record demonstrates that Plaintiff suffers from a substance abuse problem which exacerbates her symptoms of depression and anxiety, but compliance with her medications and abstinence from street drugs stabilizes her mental condition to a non-disabling degree.   Where, as here, medication has been proven to be effective in managing a claimant's symptoms and limitations, the Ninth Circuit has held that an ALJ may properly rely on such evidence to refute a claimant's subjective complaints.   *See* Crane v. Shalala, 76 F.3d 251, 254 (9th Cir. 1996). Moreover, an ALJ permissibly may reject subjective symptoms and limitations based on evidence, as exists here, indicating that a claimant is or has been abusing substances during the claimed period of disability.   *See, e.g.,* Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002)(claimant's inconsistent statements about her alcohol and substance abuse supported "the ALJ's negative conclusions about [her] veracity").

    The ALJ's lengthy credibility finding reflects that he considered Plaintiff's subjective testimony and Mr. Brown's statements and rejected the alleged subjective limitations greater than those he included in his residual functional capacity finding, because they were inconsistent with other probative evidence in the record.   *See, e.g.,* Vincent, 739 F.2d at 1395 (ALJ may discount lay witness testimony that conflicts with the medical evidence); Strauss v. Apfel, 45 F. Supp. 2d 1043, 1049 (D.

13

Or. 1999)(affirming the ALJ's rejection of testimony provided by the claimant's mother, because it conflicted with the medical testimony and other evidence).

Accordingly, the ALJ's credibility finding, including his discussion of Mr. Brown's statements, was supported by substantial evidence and is affirmed.

**B.   The ALJ Properly Considered The Medical Evidence Provided By Plaintiff's Treating Physicians.**

Ordinarily, the opinions of a treating physician should be given great weight, if not controlling weight. *See* Magallanes v. Brown, 881 F.2d 747, 751 (9th Cir. 1989)(quoting Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)); Social Security Ruling 96-2p. However, the ALJ may reject the opinion of either a treating or examining physician if that opinion is conclusory, brief, and unsupported by clinical findings. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).

Plaintiff contends that the ALJ improperly ignored, without explanation, her Global Assessment of Functioning ("GAF") score of 50,[7] as assessed by Dr. Samuel Dey, her treating physician, and by Dr. Susan O'Connor, her treating psychiatrist, and therefore improperly rejected their opinions regarding Plaintiff's functional status. (Joint Stip. at

---

[7]   A GAF of 41-50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders Text Revision, 34 (4th ed. 2000).

1  10.)

2

3      A GAF score, alone, is not dispositive of a mental disability

4  finding for social security claim purposes. *See* Revised Medial Criteria

5  for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg.

6  50746-01 (August 21, 2000)("We did not mention the GAF scale to endorse

7  its use in the Social Security and SSI disability programs. . . . [The

8  GAF scale] does not have a direct correlation to the severity

9  requirements in our mental disorder listings"). The ALJ was not obliged

10 to address the GAF score of 50 assessed by Dr. O'Connor and Dr. Dey and,

11 therefore, did not err in his failure to do so. Howard v. Commissioner,

12 276 F.3d 235, 241 (6th Cir. 2002) (rejecting the claimant's argument

13 that the ALJ improperly failed to consider her GAF score from her

14 treating physicians in assessing her residual functional capacity,

15 reasoning that "[w]hile a GAF score may be of considerable help to the

16 ALJ in formulating the RFC, it is not essential to the RFC's

17 accuracy.").

18

19     Furthermore, the ALJ did not "reject" the opinion of either Dr. Dey

20 or Dr. O'Connor. As Defendant correctly points out, neither Dr.

21 O'Connor nor Dr. Dey specifically found Plaintiff to be unable to keep

22 a job, unable to perform a job on a sustained basis, or incapable of

23 dealing with co-workers and supervisors. (Joint Stip. at 11, citing

24 A.R. 287, 347.) Rather, the ALJ accurately noted that Dr. O'Connor's

25 reports indicated that Plaintiff's condition had stabilized; she had no

26 significant symptoms or medical problems; and she was compliant with

27 treatment. (A.R. 214, 287 -- Dr. Connor's report noting that Plaintiff

28 "denies depression," is in good compliance with medication, and is "a

15

1   little bit restless but able to function.")  In addition, the ALJ noted

2   that Dr. Dey's mental status examination showed that Plaintiff:  was

3   "[a] well-developed, well nourished adult who appeared in no acute

4   physical distress"; was "mildly anxious but was not agitated"; was

5   "neatly dressed and fairly groomed"; was "clear, audible, understandable

6   and not pressured" in her speech and "[her] thoughts were relevant,

7   coherent, and verbalized in a free flowing manner." (A.R. 214, quoting

8   from A.R. 347, Dr. Dey's December 17, 2003 report.)  Dr. Dey found no

9   evidence that Plaintiff had evidence of florid thought disorder,

10  hallucinations, or a plan to harm herself, although Dr. Dey observed

11  that Plaintiff was unable to establish good eye contact.  (A.R. 347.)

12  Accordingly, the ALJ properly considered the probative medical findings

13  made by these treating physicians.

14

15      Plaintiff also contends that the ALJ's choice to discuss the

16  functional assessment of the consultative examiner, Dr. Reynaldo

17  Abejuela, in which Dr. Abejuela concluded that the claimant "has no

18  severe impairment and no severe limitations in any area of functioning,"

19  and not the GAF scores at issue, was tantamount to "selective

20  consideration of the evidence to support his own conclusions" and "is

21  impermissible." (Joint Stip. at 10.)  However, contrary to Plaintiff's

22  assertion, the ALJ expressly stated that the "opinions of Dr. Abejuela

23  and the State Agency review examiners are given limited probative

24  weight."[8]  (A.R. 213.)  The ALJ further explained:  "I have considered

25

26          [8]   Dr. Abujuela indicated in his mental status examination report
    that Plaintiff: (1) suffers from "mild depression and mild anxiety with
27  mild manic symptoms"; (2) displays no evidence of severe impairment in
    thought process or communication; (3) has no severe difficulties in
28  social functioning; (4) "no severe limitations due to emotional

                                    16

the opinions of the consultative examiner and the State Agency review examiners and find that while their opinions are reasonable given the medical evidence available at the time of their evaluations, subsequent additional medical evidence indicates the claimant is slightly more limited [than] originally thought."[9]  (*Id.*)

In addition to the records of Dr. O'Connor and Dr. Dey, the ALJ considered the March 26, 2001 report of Dr. T. Reyes, in which he indicated that Plaintiff:  (1) was "well-groomed"; (2) had "normal" motor activity and speech with no behavior disturbances; (3) was "cooperative"; and (4) was "oriented [to] all spheres"; (5) was able to adequately concentrate; (6) had a "normal" memory, noting "some difficulty [with] recent memory"; and (7) had been taking Depakote, BuSpar, and Benadryl for one month and that these medications were

impairment;" and (5) "can follow simple and complex job instructions with continuous abstinence from drugs and alcohol."  (A.R. 159.)

The state agency review psychiatrists that:  (1) Plaintiff is a 22 year old with Bipolar disorder; (2) her "mental status [is] intact"; (3) "[she] can perform simple and complex tasks"; and (3) she has a "non-severe" mental disorder.  (A.R. 161-73.)

[9]   In compliance with this Court's 2003 Order, the ALJ considered all medical records, including those created after Dr. Abejuela's consultative examination on March 22, 2001.  (*See* A.R. 212-14.)   These additional medical records included:  (1) a medical report by Dr Reyes, conducted on March 26, 2001 (A.R. 255); (2) a mental examination conducted at the Riverside Mental Health Detention Center on March 17, 2003 (A.R. 333-35); (3) progress notes by Dr. O'Connor, at the Riverside Center, on May 28, 2003 (A.R. 306); and (3) a medical report by Dr. Dey, based upon an examination of Plaintiff, conducted on December 17, 2003 (A.R. 347).

17

helping to improve her mental condition.[10]   (A.R. 213, 255-57.)

The ALJ also cited a March 17, 2003 mental health report from the Riverside Mental Health Detention Center ("Riverside Center"), which indicates that:   Plaintiff's condition improved while she was incarcerated at the Banning Jail; her appearance was normal and "she was oriented to time, place, person and self"; "[h]er affect was depressed"; "[s]he appeared to possess average intelligence and her capacity for recent and remote memory appeared intact"; her "[j]udgment and insight were fair, speech was clear and coherent, and thought process was within normal limits"; and "[she] denied hallucinations and she was presently not under psychiatric care." (A.R. 213-14, 333-35.)   She was diagnosed with a depressive disorder and prescribed Effexor and Trazadone for her symptoms.[11]   (*Id.*)   The report further indicated that "[Plaintiff] needed to address her substance abuse dependence issues and achieve sobriety before receiving more in depth treatment through Drug Court followed by outpatient psychotherapy after her sobriety was secure." (*Id.*)

After reviewing these medical records, the ALJ found that Plaintiff had the RFC to perform "simple, routine, repetitive, non-public tasks." (A.R. 217.)   In so finding, the ALJ resolved conflicts among the medical opinions, including those of Dr. O'Connor, Dr. Dey,

---

[10]     Depakote is prescribed for the treatment of manic episodes of bipolar disorder, epilepsy and migraine headaches. *See, e.g.,* 2006 WL 353454 (PDR).  BuSpar is an anti-anxiety medication. *See, e.g.,* Turner v. Barnhart, 427 F. supp. 2d 885, 887 (S.D. Iowa 2006).  Benadryl is an antihistamine. *See, e.g.,* Jackson v. East Bay Hospital, 246 F.3d 1248, 1253 n.2 (9th Cir. 2001).

[11]     Trazadone, also known as Trazodone, is an antidepressant medication. *See, e.g.,* 2006 WL 369195 (PDR).

18

Dr. Abejuela, and the state agency examiners. *See* <u>Batson v.</u>
<u>Commissioner of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1196 (9th Cir.
2004)("When presented with conflicting medical opinions, the ALJ must
determine credibility and resolve the conflict."); <u>Magallanes</u>, 881 F.2d
at 751 (upholding ALJ finding as to the claimant's alleged onset date
based upon his review of the medical records, noting that the ALJ
appropriately "summarized the facts and conflicting clinical evidence
in [a] detailed and thorough fashion, stating his interpretation and
making findings."). Accordingly, Plaintiff's argument that the ALJ
failed to consider properly the opinions of Plaintiff's treating
physicians is unpersuasive, and the ALJ's finding as to Plaintiff's RFC
is affirmed.

**C. <u>The ALJ Appropriately Disregarded The Treating Therapist's GAF
Score</u>.**

Plaintiff next contends that the ALJ's failure to address evidence
that she had a GAF of 45, as submitted by L. Harrison, her clinical
therapist at Riverside, constitutes reversible error.[12] (Joint Stip.
at 14.) However, Plaintiff concedes that "this therapist is not a
physician or other 'acceptable' medical source, and the ALJ thus may
accord his opinion less weight [than] opinions from an acceptable
medical source." (*Id.; see also* 20 C.F.R. § 416.913(a).)

For the reasons set forth above in Section B, *supra*, the ALJ was

---

[12] A GAF score of 41-50 denotes serious symptoms, such as
suicidal ideation or severe obsessional rituals, or any serious
impairment in social, occupational, or school functioning. .

1   not required to address specifically Plaintiff's GAF scores, and his

2   failure to do so does not constitute error.  *See also* <u>Magallanes</u>, 881

3   F.2d at 751-55 (citing <u>Vincent v. Heckler</u>, 739 F.2d at 1393-95)("In

4   evaluating the severity of Plaintiff's mental condition, the ALJ need

5   not discuss all of the evidence presented or recite any 'magic

6   words.'").

7

8       Furthermore, while Harrison's GAF score suggests severe symptoms,

9   as Defendant correctly notes, treatment records from the Riverside

10  Center demonstrate that, at the time Harrison assessed Plaintiff's GAF

11  score, Plaintiff had admitted to relapsing into a period of drug and

12  alcohol abuse.  (Joint Stip. at 15, citing A.R. 297 -- June 12, 2003

13  Riverside Center record noting that Plaintiff admitting "sporadic

14  use/relapses until May 17, 2003"; A.R. 331 -- May 3, 2001 Riverside

15  Center notes indicating that Plaintiff "reported unwillingness to stop

16  using drugs without psychotropic meds.")  Given these circumstances,

17  Harrison's GAF determination does not accurately reflect Plaintiff's

18  true mental ability to function when she is not under the influence of

19  illegal drugs, and it does not suggest that a more restrictive RFC is

20  appropriate.

21

22      Accordingly, this argument is rejected.

23

24  **D.   The ALJ Posed A Complete Hypothetical Question To The**

25  **Vocational Expert.**

26

27      The ALJ's job at the fifth step in the sequential evaluation

28  procedure is to pose hypothetical questions that set out all of the

20

claimant's impairments for the consideration of the vocational expert, who then "translates these factual scenarios into realistic job market probabilities." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). Hypothetical questions posed to the vocational expert must accurately describe all of the limitations and restrictions of claimant that are supported by the record. *Id.* at 1101; Matthews, 10 F.3d at 681. A VE's response to a hypothetical question constitutes substantial evidence only if it is supported by the medical evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

In posing the hypothetical question to the VE, the ALJ asked:

I'd like you to consider a person of [Plaintiff's] vocational background, younger individual, 9th grade [education]. Her jobs would indicate she was literate. Past relevant work as a cashier and machine operator. Consider there are no exertional limits, work possible at any exertional level. Consider mental limits which would restrict the work to that which involves only simple routine, repetitive, non-public tasks. Considering that entire constellation, would there be any sort of entry-level unskilled work that could be performed?

(A.R. 221.) The vocational expert responded that Plaintiff could perform the jobs of a simple assembler, hand packager, maid, and housekeeper. (*Id.*)

Plaintiff contends that this hypothetical question is incomplete, because it does not address "any of the limitations that the

grandfather testified to such as problems with personal hygiene, concentration, task completion, mood swings, and inability to deal with crowds or being alone." (Joint Stip. at 16.)  In addition, Plaintiff contends that the ALJ erred in failing to consider the GAF score of 50 as assessed by Drs. Dey and O'Connor, in positing his hypothetical question.  (*Id.*)

As explained above, the ALJ properly determined that statements made by both Plaintiff and her grandfather were not "totally credible," and the ALJ did not err in failing to discuss and in disregarding the GAF scores of 50 assessed by Dr. O'Connor and Dr. Dey and the GAF score of 45 assessed by Harrison. *See also* <u>Matthews</u>, 10 F.3d at 681 (holding that the ALJ did not err in excluding a limitation from hypothetical that was contradicted by the claimant's own, "highly probative" testimony and on the ALJ's rejection of the claimant's pain complaints).  Therefore, the ALJ, in rendering Plaintiff's RFC, properly concluded that absent polysubstance abuse, Plaintiff did not suffer from a disabling condition.[13]  *See* 20 C.F.R. §§ 404.1535(b), 416.935(b).

The ALJ, in assessing Plaintiff's ability to perform basic work activities, weighed the evidence and properly resolved any conflicting evidence in the record.  <u>Batson</u>, 359 F.3d at 1195 (citing <u>Matney v. Sullivan</u>, 981 F.2d 1016, 1019 (9th Cir. 1992))("[w]hen presented with conflicting medical opinions, the ALJ must determine credibility and

---

[13]   The claimant bears the burden of proving that drug or alcohol addiction is not a contributing factor material to his or her disability. <u>Mittlestedt v. Apfel</u>, 204 F.3d 847, 852 (8th Cir. 2000); <u>Brown v. Apfel</u>, 192 F.3d 492, 498 (5th Cir. 1999).

resolve the conflict."). As Defendant correctly states, "because the ALJ incorporated the credible limitations implied by Drs. O'Connor and Dey into his RFC findings, there was no deficiency associated with the ALJ's RFC assessment and the ALJ's hypothetical question to the VE." (Joint Stip. at 18.) Therefore, this Court finds that the ALJ posited a complete hypothetical question, based on a proper RFC determination that was supported by substantial evidence of record, even if that assessment is susceptible to more than one rational interpretation. Batson, 359 F.3d at 1197 (citing Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995))("[w]hen the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion.").

**CONCLUSION**

For all of the foregoing reasons, the Court finds that the Commissioner's decision is based on the correct application of the proper legal standards and is supported by substantial evidence, and that neither reversal of the ALJ's decision nor remand is warranted. Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

23

DATED: September 29, 2006

                                    /s/
                            MARGARET A. NAGLE
                    UNITED STATES MAGISTRATE JUDGE